WO                         IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


DESIREE REYNA,                          )
                                        )
                      Plaintiff,        )
                                        )
            vs.                         )
                                        )
CAROLYN W. COLVIN, Acting               )
Commissioner of Social Security,        )
                                        )          No. 2:13-cv-1541-HRH
                      Defendant.        )
_____)

<u>O R D E R</u>

 This is an action for judicial review of the denial of disability benefits under Title II and Tile XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff has timely filed her opening brief,[1] to which defendant has responded.[2] Oral argument was not requested and is not deemed necessary.

<u>Procedural Background</u>

 Plaintiff is Desiree Reyna. Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

---

[1]Docket No. 18.

[2]Docket No. 23.

In April and May 2009, plaintiff filed applications for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff alleged that she became disabled on January 2, 2009. Plaintiff alleged that she was disabled because of major depression, anxiety disorder, heart disease, and chronic abdominal pain. Plaintiff's applications were denied initially and upon reconsideration. After a hearing on October 5, 2011, an administrative law judge (ALJ) denied plaintiff's claims. On May 31, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's November 17, 2011 decision the final decision of the Commissioner. On July 30, 2013, plaintiff commenced this action in which she asks the court to find that she is entitled to benefits.

## General Background

Plaintiff was born on April 13, 1968. She was 43 years old at the time of the hearing. Plaintiff has a GED and received special education services in grade school and high school. Plaintiff's past relevant work includes work as an admissions and records clerk and a cashier.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through June 30, 2013."[3]

---

[3] Admin. Rec. at 25.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since January 2, 2009, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: ischemic heart disease, status post myocardial infarction, hypertension, mild obstructive sleep apnea, a depressive disorder, not otherwise specified, panic disorder without

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 25.

agoraphobia, lumbar degenerative disc disease with a small disc protrusion at L5-S1 and cervical disc disease with herniated nucleus pulposus...."[6]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7]  The ALJ considered Listing 1.00 for musculoskeletal disorders, Listing 3.00 for respiratory disorders, and Listing 4.00 for cardiovascular disorders.[8]  The ALJ also considered Listing 12.04 for affective disorders and Listing 12.06 for anxiety-related disorders.   The ALJ considered the "paragraph B" criteria and found that plaintiff had mild restriction of her activities of daily living; moderate difficulties in social functioning; moderate difficulties as to concentration, persistence, or pace; and one episode of decompensation of extended duration.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) and as functionally described in Exhibit

_____

[6]Admin. Rec. at 25.

[7]Admin. Rec. at 26.

[8]Admin. Rec. at 26.

[9]Admin. Rec. at 26.

9F,[10] except that the claimant should perform simple work tasks and should work in a non-public setting."[11]

The ALJ found plaintiff's pain and symptom statements less than credible because plaintiff's testimony that she quit her last job in January 2009 due to anxiety and panic attacks was inconsistent with treatment notes from that time period and plaintiff's prior report that she was terminated due to chronic tardiness.[12]  The ALJ also found plaintiff's statements less than credible because she "testified that she was a little drowsy due to medical side effects; however, there are no significant complaints in the record" and because plaintiff "testified that she ... had a 10 pound lifting limit after having her stents[13] implanted, however, this is not supported by the records."[14]  The ALJ also found that plaintiff "described daily activities which are not limited to the extent one would

_____

[10]Exhibit 9F is Dr. Bousvaros' opinion.  On August 31, 2009, Dr. Bousvaros opined that plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to pushing and pulling; had no limitations as to climbing, balancing, stooping, kneeling, crouching, and crawling; and had no manipulative limitations and no environmental limitations.  Admin. Rec. at 264-267.

[11]Admin. Rec. at 27.

[12]Admin. Rec. at 29.

[13]Plaintiff had two heart stents implanted in 2005 after she had a heart attack. Admin. Rec. at 648.

[14]Admin. Rec. at 29.

expect...."[15]   And, the ALJ found plaintiff's statements less than credible because "the objective medical evidence reflects that the medications" that plaintiff takes have "been effective in controlling [plaintiff's] symptoms."[16] The ALJ gave great weight to the opinion of Dr. Krabbenhoft[17] because it was "supported by the objective medical evidence, as well

_____

[15]Admin. Rec. at 29.

[16]Admin. Rec. at 30.

[17]Jonna L. Krabbenhoft, Psy.D., did a psychological evaluation on October 7, 2009, and opined that plaintiff

> can remember simple instructions and work-like procedures. She may have mild to moderate difficulties remembering detailed instructions. Claimant can follow simple instructions. She may experience mild-to-moderate difficulty completing detailed instructions, sustaining concentration, performing activities within a schedule, and completing a normal workday at a consistent pace. She may perform better at simple, repetitive tasks. Claimant does not need special supervision and can make simple decisions. Claimant may have mild-to-moderate difficulty responding to supervisory criticism. She may experience mild difficulty with interacting appropriately with the general public (Secondary to anxiety and depression). Can ask simple questions, interact with co-workers, and maintain appropriate hygiene. Claimant may have mild-to-moderate difficulty responding to work setting changes. She can take appropriate precautions, travel to unfamiliar places, and set realistic goals independently.

Admin. Rec. at 285.

as by [plaintiff's] activities of daily living.[18]   The ALJ also gave great weight[19] to the opinions of Dr. Bousvaros and Dr. Ying.[20]   The ALJ declined to give great weight to Dr. Chaney's opinion[21] because she "did not perform psychological testing on [plaintiff] in h[er] clinic" and "h[er] psychiatric evaluation was done many years ago, at the outset of treatment."[22]   The ALJ also declined to give great weight to Dr. Yang's opinion[23] because

---

[18]Admin. Rec. at 30.

[19]Admin. Rec. at 30.

[20]On October 15, 2009, Dr. K. Ying opined that plaintiff "can carry out simple instructions and does not need special supervision to make simple decisions.  She can sustain simple tasks for a 40hr work wk with mild-moderate interference from fatigue.  She can interact adequately with others but will likely do better in a non-public setting.  She can adapt to changes in a work place."  Admin. Rec. at 312.

[21]The ALJ refers to Dr. "Keene" but apparently meant Dr. Chaney based on the exhibits to which the ALJ cited.  Dr. Chaney was plaintiff's treating psychiatrist from April 2, 2007 to April 13, 2010.  Admin. Rec. at 404-483, 504-515 & 585-596.  On November 18, 2009, Dr. Chaney opined that plaintiff had a moderately severe impairment as to her ability to relate to people; that her daily activities were moderately severely to severely restricted; that her deterioration in personal habits was moderately severe to severe; that her degree of constriction of interests was severe; that her ability to understand, carry out and remember instructions was moderately severely limited; that her ability to respond to supervision and co-workers was moderately severely limited; that her ability to respond to customary work pressures was moderately severely limited; that her ability to perform simple tasks was moderately limited; that her ability to perform complex tasks was moderately severely limited; that her ability to perform repetitive tasks was mildly limited; and that her ability to perform varied tasks was moderately severely limited.  Admin. Rec. at 485-486.

[22]Admin. Rec. at 30.

[23]The ALJ refers to Dr. "Young" but apparently meant Dr. Yang based on the
(continued...)

she had only seen plaintiff twice.[24]   The ALJ gave no weight to the opinions of FNP

Blanchard[25] because   "[t]he opinions contrast[] sharply with the other evidence of

record[.]"[26]   The ALJ gave some weight[27] to the lay testimony of Teresa Reina.[28]

---

[23](...continued)

exhibits to which the ALJ referred.  On May 14, 2010, Dr. Yang took over plaintiff's care
from Dr. Chaney.  Admin. Rec. at 582.  On July 16, 2010, Dr. Yang opined that plaintiff's
impairments as to her ability to relate to other people, to attend to daily activities, and to
keep up her personal habits were moderately severe; that her constriction of interests was
severe; that her limitations as to her ability to understand, carry out and remember
instructions, and to respond appropriately to supervision, co-workers, and customary work
pressures were moderately severe; that her limitation to perform simple tasks was
moderate; that her limitation to perform complex tasks was moderately severe; that her
limitation to perform repetitive tasks was mild; and that her limitation to perform varied
tasks was moderately severe.  Admin. Rec. at 576-577.

[24]Admin. Rec. at 30.

[25]Blanchard was plaintiff's primary care provider from November 14, 2008 through
August 26, 2011.  Admin. Rec. at 355-371, 593-595 & 782-784.  On July 16, 2010, Blanchard
opined that plaintiff could not bend, crawl, climb, reach, stoop, balance, crouch or crawl;
could not repetitively use her hands or feet; could not work around unprotected heights,
moving machinery, and marked changes in temperature/humidity; could not drive; could
not be exposed to dust/fumes/gases; had moderately severe to severe side effects from her
medication; and that plaintiff's chronic fatigue and dizziness prevented her from sustaining
work activity for 8 hours a day, 5 days a week.  Admin. Rec. at 652-653.  On August 26,
2011, Blanchard opined that plaintiff could not perform work 8 hours a day, 5 days a week
on a regular and consistent basis;  could not bend, crawl, climb, reach, stoop, balance,
crouch or crawl;  could not repetitively use her hands or feet; and had moderately severe
to severe side effects from her medication.  Admin. Rec. at 767-768.

[26]Admin. Rec. at 30.

[27]Admin. Rec. at 30.

[28]Reina, plaintiff's friend, completed a third-party function report on May 4, 2009.
                                                                (continued...)

-8-

At step four, the ALJ found that plaintiff "is capable of performing past relevant work as a general clerical worker...."[29]

Thus, the ALJ found that plaintiff had "not been under a disability, as defined in the Social Security Act, from January 2, 2009, through the date of this decision...."[30]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards.  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Id.</u> (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  <u>Id.</u>  If the evidence is susceptible to more than one reasonable

_____

[28](...continued)
Admin. Rec. at 128-135.

[29]Admin. Rec. at 31.

[30]Admin. Rec. at 31.

interpretation, the court must uphold the Commissioner's decision.   Id.   But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"   Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in not giving great weight to Dr. Chaney's opinion.  On November 18, 2009, Dr. Chaney opined that plaintiff had a moderately severe impairment as to her ability to relate to people; that her daily activities were moderately severely to severely restricted; that her deterioration in personal habits was moderately severe to severe; that her degree of constriction of interests was severe; that her ability to understand, carry out and remember instructions was moderately severely limited; that her ability to respond to supervision and co-workers was moderately severely limited; that her ability to respond to work pressures was moderately severely limited; that her ability to perform simple tasks was moderately limited; that her ability to perform complex tasks was moderately severely limited; that her ability to perform repetitive tasks was mildly limited; and that her ability to perform varied tasks was moderately severely limited.[31]  The functional capacity form that Dr. Chaney completed asked whether "a psychological

---

[31]Admin. Rec. at 485-486.

evaluation" was "considered in describing the limitations in this functional assessment?"[32]

In response, Dr. Chaney wrote that "[p]sychological testing is not done in this clinic.

Psychiatric evaluation was done many years ago at the onset of treatment."[33]

 "As a general rule, more weight should be given to the opinion of a treating source

than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821,

830 (9th Cir. 1995). "[I]f the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing 'specific and legitimate

reasons' supported by substantial evidence in the record for so doing." Id. (quoting

Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Chaney's opinion was

contradicted by the opinions of Dr. Krabbenhoft and Dr. Ying. Thus, the ALJ was required

to give specific and legitimate reasons for rejecting Dr. Chaney's opinion.

 The ALJ declined to give Dr. Chaney's opinion great weight because she "did not

perform psychological testing on the claimant in h[er] clinic" and because Dr. Chaney

"noted that [her] psychiatric evaluation was done many years ago, at the outset of

treatment."[34] Defendant argues that the lack of psychological testing and a stale psychiatric

evaluation were legitimate reasons for the ALJ to give Dr. Chaney's opinion little weight.

---

[32]Admin. Rec. at 486.

[33]Admin. Rec. at 486.

[34]Admin. Rec. at 30.

"The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3). Defendant argues that the ALJ properly found that Dr. Chaney had presented very little in the way of objective evidence to support her opinion and thus the ALJ did not err in giving little weight to Dr. Chaney's opinion.

Dr. Chaney primarily provided medication management, and the lack of objective findings is a proper reason for discounting a medical opinion. But, because plaintiff only had insurance through the state-funded program, the treatment she received from Dr. Chaney at Terros was pretty much her only option. An ALJ may not penalize a claimant for failing to obtain treatment she cannot afford. Gamble v. Chater, 68 F.3d 319, 320-21 (9th Cir. 1995). Moreover, when deciding what weight to give a medical opinion, an ALJ is to consider "'[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)). At the time of her opinion, Dr. Chaney had been treating plaintiff for over two years during which time she had been able to observe plaintiff's symptoms and observe the effects of medication on plaintiff's condition. Thus, the reason the ALJ gave

for discounting Dr. Chaney's opinion was not legitimate.  The ALJ erred as to Dr. Chaney's

opinion.

Plaintiff next argues that the ALJ erred in declining to give great weight to Dr.

Yang's opinion.  On July 16, 2010, Dr. Yang opined that plaintiff's impairments as to her

ability to relate to other people, to attend to daily activities, and to keep up her personal

habits were moderately severe; that her constriction of interests was severe; that her

limitations as to her ability to understand, carry out and remember instructions and to

respond appropriately to supervision, co-workers, and customary work pressures were

moderately severe; that her limitation to perform simple tasks was moderate; that her

limitation to perform complex tasks was moderately severe; that her limitation  to perform

repetitive tasks was mild; and that her limitation to perform varied tasks was moderately

severe.[35]  Dr. Yang noted that she had taken over plaintiff's care from Dr. Chaney on May

15, 2010 and had only seen plaintiff twice and thus it was difficult for Dr. Yang to make a

"judgment on [plaintiff's] progress...."[36]

The ALJ rejected Dr. Yang's opinion because Dr. Yang had only seen plaintiff twice.

Plaintiff argues that this was not a legitimate reason to reject Dr. Yang's opinion.  Plaintiff

argues that it was inconsistent for the ALJ to reject Dr. Yang's opinion because she had only

---

[35]Admin. Rec. at 576-577.

[36]Admin. Rec. at 577.

seen plaintiff twice while the ALJ gave the opinion of Dr. Krabbenhoft, who had only seen plaintiff once, great weight.

An ALJ is permitted to consider the length and frequency of treatment when weighing an opinion. 20 C.F.R. § 404.1527(c)(2)(i). The ALJ could have concluded that Dr. Krabbenhoft's opinion was better supported than Dr. Yang's, even though neither source had a long-term treating relationship with plaintiff, because Dr. Krabbenhoft did psychological testing during the one time she saw plaintiff;[37] while Dr. Yang did not do any such testing during plaintiff's two visits. But, as discussed above, such testing was not an option at Terros and rejecting Dr. Yang's opinion because of a lack of testing would penalize plaintiff for not being able to afford different treatment. Thus, it was inconsistent for the ALJ to reject Dr. Yang's opinion because she only saw plaintiff twice yet give Dr. Krabbenhoft's opinion great weight when she only saw plaintiff once. Because of this inconsistency, the reason the ALJ gave for rejecting Dr. Yang's opinion was not legitimate. The ALJ erred as to Dr. Yang's opinion.

Plaintiff next argues that the ALJ erred in giving great weight to Dr. Krabbenhoft's opinion. Dr. Krabbenhoft opined that plaintiff

> can remember simple instructions and work-like procedures. She may have mild to moderate difficulties remembering detailed instructions. Claimant can follow simple instructions. She may experience mild-to-moderate difficulty completing

---

[37] Admin. Rec. at 282-283.

-14-

> detailed instructions, sustaining concentration, performing activities within a schedule, and completing a normal workday at a consistent pace. She may perform better at simple, repetitive tasks. Claimant does not need special supervision and can make simple decisions. Claimant may have mild-to-moderate difficulty responding to supervisory criticism. She may experience mild difficulty with interacting appropriately with the general public (Secondary to anxiety and depression). Can ask simple questions, interact with co-workers, and maintain appropriate hygiene. Claimant may have mild-to-moderate difficulty responding to work setting changes. She can take appropriate precautions, travel to unfamiliar places, and set realistic goals independently.[38]

Plaintiff argues that the ALJ erred in giving Dr. Krabbenhoft's opinion great weight because Dr. Krabbenhoft was a psychologist and not a psychiatrist, only saw plaintiff once, did not treat her, saw her prior to her alleged onset date,[39] and only reviewed nine treatment notes, five of which were limited to medication management.

When assigning weight to medical expert opinions, Social Security regulations require consideration of the examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factors. See 20 C.F.R. § 404.1527(c). As plaintiff points out, most of these factors would weigh against giving Dr. Krabbenhoft's opinion great weight. The ALJ is required to resolve inconsistencies in the medical opinion evidence and may give an examining physician's opinion more weight than a treating

---

[38]Admin. Rec. at 285.

[39]This is incorrect. Plaintiff's alleged onset date was January 2, 2009. Dr. Krabbenhoft examined plaintiff on October 7, 2009.

physician's opinion if the ALJ provides specific and legitimate reasons for rejecting the treating physician's opinion. But here, as discussed above, the ALJ erred in declining to give Dr. Chaney's and Dr. Yang's opinions great weight. The ALJ could not give Dr. Krabbenhoft's opinion great weight unless the ALJ properly rejected the opinions of plaintiff's treating physicians. Dr. Chaney's and Dr. Yang's treatment notes illustrate why the opinions of treating physicians are generally entitled to greater weight than those of examining physicians. Dr. Chaney and Dr. Yang saw plaintiff's problems developing over the claimed disability period. Dr. Krabbenhoft examined plaintiff one time and apparently did not review the entirety of Dr. Chaney's treatment notes. Dr. Chaney and Dr. Yang were in a much better position to opine on the limitations flowing from plaintiff's mental impairments than Dr. Krabbenhoft was. Dr. Krabbenhoft's opinion was entitled to some weight, but the ALJ erred in giving that opinion great weight.

Plaintiff next argues that the ALJ erred in giving no weight to the opinions of FNP Blanchard. On July 16, 2010, Blanchard opined that plaintiff could not bend, crawl, climb, reach, stoop, balance, crouch or crawl; could not repetitively use her hands or feet; could not work around unprotected heights, moving machinery, and marked changes in temperature/humidity; could not drive; could not be exposed to dust/fumes/gases; had moderately severe to severe side effects from her medication; and that plaintiff's chronic fatigue and dizziness prevented her from sustaining work activity for 8 hours a day, 5 days

a week.[40]  On August 26, 2011, Blanchard opined that plaintiff could not perform work 8 hours a day, 5 days a week on a regular and consistent basis; could not bend, crawl, climb, reach, stoop, balance, crouch or crawl; could not repetitively use her hands or feet; and had moderately severe to severe side effects from her medication.[41]

The ALJ gave no weight to these opinions because they "contrast[ed] sharply with the other evidence of record[.]"[42]  By way of example, the ALJ found that "Blanchard's assertion that [plaintiff] has no use of her right or left hand or right or left foot is not supported by any objective medical evidence."[43]  The ALJ also found that "Blanchard's assertion that [plaintiff] suffers severe side effects from her medication is contradicted by [her] statement that she suffered no troublesome side effects from her medication."[44]

Blanchard is not an acceptable medical source but rather is an "other source."  See Ghanim, 763 F.3d at 1161 (quoting 20 C.F.R. § 404.1513(d)) ("Nurse practitioners and therapists are considered 'other sources'").  "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'"  Molina v.

---

[40]Admin. Rec. at 652-653.

[41]Admin. Rec. at 767-768.

[42]Admin. Rec. at 30.

[43]Admin. Rec. at 30.

[44]Admin. Rec. at 30.

Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d

1217, 1224 (9th Cir. 2010)).

The reason given by the ALJ met this standard. The record did not support

Blanchard's opinion that plaintiff had moderately severe to severe side effects from her

medications. Dr. Chaney noted in 2008 and 2009 that plaintiff reported no side effects[45] and

Dr. Yang noted in the month before and after Blanchard's 2010 opinion that plaintiff

reported no side effects.[46] Blanchard's opinion that plaintiff could not use her hands or feet

for repetitive activity was also not supported by the record. In March 2011, Dr. Goodell[47]

noted that although plaintiff had some decrease in sensation in her left leg, her "MRI is

perfectly normal" and "nerve conduction velocities in the recent past demonstrate slight

slowing in the right, not the left, leg."[48] The ALJ did not err as to Blanchard's opinions.

Plaintiff next argues that the ALJ erred in finding her pain and symptom testimony

less than credible. "An ALJ engages in a two-step analysis to determine whether a

claimant's testimony regarding subjective pain or symptoms is credible." Garrison v.

Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the

---

[45]Admin. Rec. at 404, 408, 413, & 421.

[46]Admin. Rec. at 733 & 742.

[47]Richard Goodell, M.D., is a neurosurgeon who treated plaintiff. Admin. Rec. at 797-800.

[48]Admin. Rec. at 799-800.

claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner, 613 at 1224 n.3).  "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

-19-

treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" Id. at 1112-13 (internal citations omitted). "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113.

The ALJ found plaintiff's pain and symptom statements less than credible because plaintiff's testimony that she quit her last job in January 2009 due to anxiety and panic attacks was inconsistent with treatment notes from that time period and plaintiff's prior report that she was terminated due to chronic tardiness.[49]  The ALJ also found plaintiff's statements less than credible because she "testified that she was a little drowsy due to medical side effects; however, there are no significant complaints in the record" and because plaintiff "testified that she ... had a 10 pound lifting limit after having her stents implanted, however, this is not supported by the records."[50]  The ALJ also found that plaintiff "described daily activities which are not limited to the extent one would

---

[49]Admin. Rec. at 29.

[50]Admin. Rec. at 29.

expect...."[51]   And, the ALJ found plaintiff's statements less than credible because "the objective medical evidence reflects that the medications" that plaintiff takes have "been effective in controlling [her] symptoms."[52]

The first reason given by the ALJ, that her testimony that she quit her last job in January 2009 due to anxiety and panic attacks was inconsistent with treatment notes from that time period and her prior report that she was terminated due to chronic tardiness, was not a convincing reason.  Plaintiff's treatment notes show that she was having attendance problems at work because of her anxiety attacks.  For example, on October 6, 2008, plaintiff reported that she was having "a lot more dep[ression] and anxiety.  Cries a lot.  Misses work.  Doesn't want to drive. Turning around then goes home."[53]  Dr. Chaney noted that plaintiff had "been having panic attacks while on the way to work for no explained reason. She has missed work and is worried about her job."[54]  In addition, at the hearing, plaintiff testified that she "was late every day, having a lot of anxiety getting to work and leaving work."[55]   Thus, plaintiff's statement that she was fired for chronic tardiness is not inconsistent with her statement that she lost her job due to her panic attacks.

---

[51]Admin. Rec. at 29.

[52]Admin. Rec. at 30.

[53]Admin. Rec. at 424.

[54]Admin. Rec. at 425.

[55]Admin. Rec. at 955.

The second reason, that the record did not support plaintiff's testimony that she was a little drowsy due to medical side effects, was not convincing because the evidence on this issue was ambiguous.  Plaintiff testified specifically that it was Klonopin that made her a little drowsy.[56]  There is some record support for this testimony.  On October 17, 2008, during a visit at Heartcare, P.C.,[57] plaintiff reported that "she cannot tolerate the Klonopin that her psychiatrist gave her during the day because it makes her too sleepy [so] she takes it at night."[58]  And, plaintiff also once reported to Dr. Chaney some drowsiness associated with her psych medication in general.[59]  But, there is also evidence to the contrary.  After plaintiff's suicide attempt in 2007,[60] "[s]he was started on Paxil as well as Klonopin" which, it was noted, "she was able to tolerate without any problems."[61]  And, plaintiff routinely reported that she had no side effects from her psych medications in general.[62]

---

[56]Admin. Rec. at 970.

[57]Plaintiff received cardiac care at Heartcare from June 20, 2008 through June 3, 2010. Admin. Rec. at 315-353, 524-526 & 571-572.

[58]Admin. Rec. at 333.

[59]Admin. Rec. at 411.

[60]On March 24, 2007, plaintiff overdosed on Elavil because she "was depressed with her home situation...."  Admin. Rec. at 206.

[61]Admin. Rec. at 206.

[62]Admin. Rec. at 404, 408, 413, 421, 714, 733 & 742.

The third reason, that there was no record support for plaintiff's contention that she was limited to lifting 10 pounds after she had her stents implanted, was also not convincing.  The ALJ is correct that there was no evidence in the record supporting this claim, but that is probably because none of the evidence relating to plaintiff's stents, which were implanted in 2005, is in the record.  If the ALJ doubted plaintiff's testimony as to the weight limitation, then the ALJ should have asked plaintiff to submit her medical records from 2005.

The fourth reason given by the ALJ, that plaintiff's claim of disability was inconsistent with her report of daily activities, was also not convincing.  The ALJ noted that plaintiff drove her son to school, makes meals for them, exercises three times a week, walks her dog, goes shopping, and attends her doctors' appointments and physical therapy.[63] But, the ALJ did not explain how "the ability to perform those daily activities translated into the ability to perform appropriate work."  Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

The fifth reason given by the ALJ, that the record shows that medication was effective in controlling plaintiff's symptoms, was not a convincing reason.  There is no evidence that medication helped with plaintiff's crying spells, which she reported were

---

[63]Admin. Rec. at 29-30.

affecting her ability to work.[64] The ALJ also ignored that the record shows that plaintiff had stable periods when her medication did seem to be controlling her symptoms followed by periods of instability when the medication did not seem to be working. [65] The record also indicates that plaintiff's medication had to be changed in order to better control her symptoms.[66] And, Dr. Chaney noted in November 2009, that "med management has not proven to be helpful."[67]

Finally, plaintiff argues that the ALJ erred in finding the lay testimony of plaintiff's friend, Teresa Reina,  only "partially credible" and assigning it only "some weight."[68] "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  Because the ALJ did not explain why she found Reina's report only partially credible, the ALJ erred as to Reina's opinion.

Defendant argues that this error was harmless.  See Molina, 674 F.3d at 1122 ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness

---

[64]Admin. Rec. at 448 (on October 8, 2007, plaintiff reported that she "leaves work crying").

[65]See Admin. Rec. at 411, 416-417, 424-425, 435, 448-449 & 461.

[66]See Admin. Rec. at 417 (increasing Lexapro); 449 (changing from Paxil to Lexapro because Paxil not working).

[67]Admin. Rec. at 580.

[68]Admin. Rec. at 30.

testimony, such error was harmless given that the lay testimony described the same limitations as Molina's own testimony, and the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony."). But, because as discussed above, the ALJ erred as to plaintiff's credibility, the ALJ's reasons for rejecting plaintiff's testimony cannot apply with equal force to Reina's. The ALJ's error as to Reina's testimony was not harmless.

Because the ALJ erred as to the opinions of Dr. Chaney, Dr. Yang, and Dr. Krabbenhoft; as to plaintiff's credibility; and as to Reina's testimony, the court must determine whether to remand this matter for further proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. However, the court is required "to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 759 F.3d at 1021.

If Dr. Chaney's opinion is credited as true, plaintiff would be disabled. The ALJ acknowledged that if Dr. Chaney's opinion were accepted, there would be no work that plaintiff could perform.[69] If Dr. Yang's opinion were credited as true, plaintiff would be disabled. The vocational expert testified that if someone had the limitations as assessed by Dr. Yang, that person would be precluded from competitive employment.[70] And, if plaintiff's testimony were credited as true, plaintiff would be disabled. Plaintiff testified that she has crying spells once or twice a week and that they last anywhere from two hours to all day, that she had trouble concentrating and could only concentrate for about one-half hour, and that a "couple times a week" she cannot get out of bed.[71] The vocational expert testified that someone who is late at least once a week could not maintain employment, that someone who experienced crying spells at work would have difficulty maintaining employment, that someone who missed more than one day of work per month could not

---

[69]Admin. Rec. at 979.

[70]Admin. Rec. at 979-980.

[71]Admin. Rec. at 961-963.

maintain employment, and that someone who is off task 15 percent of the day would have difficulty sustaining employment.[72]

The record as a whole does not create serious doubt that plaintiff is in fact disabled. Thus, a remand for an award of benefits is appropriate.

<u>Conclusion</u>

Based on the foregoing, the decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 25th day of February, 2015.

/s/ H. Russel Holland
United States District Judge

---

[72]Admin. Rec. at 981-982.